# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Lansdale 329 Prop, LLC, 329 Mainlans, LLC, and Lincoln Liquor LLC d/b/a Stove and Tap; 560 Wellington Square Associates LLC d/b/a Al Pastor; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Hartford Underwriters Insurance Company and The Hartford Financial Services Group, Inc. d/b/a The Hartford,<br><br>Defendants. | Case No._____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Lansdale 329 Prop, LLC, 329 Mainlans, LLC and Lincoln Liquor LLC d/b/a Stove and Tap, and 560 Wellington Square Associates LLC d/b/a Al Pastor ("Plaintiffs"), for themselves and all other members of the below-defined nationwide Plaintiffs' classes (collectively, the "Insured Class"), bring this class action against Defendants Hartford Underwriters Insurance Company and The Hartford Financial Services Group, Inc. d/b/a The Hartford (collectively, "The Hartford" or "Defendants"). Plaintiffs allege the following based on personal knowledge as to Plaintiffs and Plaintiffs' own acts, and on information and belief as to all other matters based upon the investigation of Plaintiffs' counsel and their review of publicly available information, including news articles, press releases, and other publicly available information.

## NATURE OF THE ACTION

1. Plaintiffs own and operate Stove and Tap and Al Pastor, full-service restaurants with locations in Lansdale, Malvern, and Exton, Pennsylvania. Plaintiffs' futures are now threatened by the government-ordered shutdowns prohibiting on-site dining which prevents patrons' and employees' access to their restaurants and denies the use of their restaurant properties for their intended purpose.

2. To protect their businesses in the event that they suddenly had to suspend operations for reasons outside of their control, Plaintiffs purchased Business Owner's coverage from The Hartford. Each of the Business Owner's polices included separate endorsements for "Business Income and Extra Expense" (the "Business Income endorsement") and Business Income for Civil Authority Actions (the "Civil Authority endorsement").

3. Plaintiffs were forced to suspend or reduce business at Stove and Tap and Al Pastor restaurants due to orders issued by civil authorities in Pennsylvania mandating the suspension of business for on-site services to prevent potential exposure to COVID-19. Plaintiffs were also required to take necessary steps to prevent further damage and minimize the suspension of business and continue operations. Plaintiffs' insured premises did not experience any known presence of, suspected presence of, or exposure to the COVID-19 virus.

4. Plaintiffs were denied business income coverage by The Hartford. Upon information and belief, The Hartford has, on a wide scale and uniform basis, refused to pay its insureds for losses suffered due to any executive orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations.

## THE PARTIES

5. Plaintiff Lansdale 329 Prop, LLC is a Pennsylvania limited liability company, and is a citizen of Pennsylvania. Plaintiff is an owner and operator of Stove and Tap restaurant, with a principal place of business at 329 West Main Street, Lansdale, Pennsylvania 19446.

6. Plaintiff 329 Mainlans, LLC is a Pennsylvania limited liability company, and is a citizen of Pennsylvania. Plaintiff is an owner and operator of Stove and Tap restaurant, with a principal place of business at 329 West Main Street, Lansdale, Pennsylvania 19446.

7. Plaintiff Lincoln Liquor LLC is a Pennsylvania limited liability company, and is a citizen of Pennsylvania. Plaintiff is the owner and operator of Stove and Tap restaurant, with a principal place of business at 245 Lancaster Avenue, Malvern, Pennsylvania 19355.

8. Plaintiff 560 Wellington Square Associates, LLC is a Pennsylvania limited liability company, and is a citizen of Pennsylvania. Plaintiff is the owner and operator of Al Pastor restaurant, with a principal place of business at 560 Wellington Square, Exton, Pennsylvania 19341.

9. Defendant Hartford Underwriters Insurance Company is a property and casualty company. Defendant is a citizen of Connecticut, being organized under the laws of the State of Connecticut and with its headquarters and principal place of business at One Hartford Plaza, Hartford, Connecticut 06155. On information and belief, Hartford Underwriters Insurance Company is a subsidiary of The Hartford Financial Services Group, Inc.

10. Defendant The Hartford Financial Services Group, Inc. d/b/a The Hartford is a property and casualty company. Defendant is a citizen of Connecticut, being organized under the laws of the State of Connecticut and with its headquarters and principal place of business at One Hartford Plaza, Hartford, Connecticut 06155. On information and belief, The Hartford Financial Services Group, Inc. is the parent of Hartford Underwriters Insurance Company.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendants. The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Defendants, as Defendants are registered to conduct business in this Commonwealth, regularly conduct business in Pennsylvania, and have sufficient contacts in Pennsylvania. Defendants intentionally avail themselves of this jurisdiction by conducting operations here and promoting, selling, and marketing Defendants' policies of insurance to resident Pennsylvania consumers and entities.

13. Venue is proper in this District under 28 U.S.C. § 139l(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District and the Plaintiffs' insured properties that are the subject of the action are situated in this District.

## FACTUAL ALLEGATIONS

**A.    The Hartford Policies**

14. In return for the payment of a premium, The Hartford issued Policy No. 13 SBA AE7GUH to Lansdale 329 Prop, LLC and 329 Mainlans, LLC d/b/a Stove and Tap, for a policy period of February 1, 2020 to February 1, 2021. Policy No. 13 SBA AE7GUH is attached hereto as Exhibit A. Lansdale 329 Prop, LLC and 329 Mainlans, LLC d/b/a Stove and Tap have performed all of their obligations under Policy No. 13 SBA AE7GUH, including the payment of the premium. The Covered Property and Scheduled Premises is the Stove and Tap located at 329 Main Street, Lansdale, Pennsylvania 19446.

15. In return for the payment of a premium, The Hartford issued Policy No. 13 SBA AE7BT5 to Lincoln Liquor, LLC d/b/a Stove and Tap, for a policy period of December 16, 2019 to December 16, 2020. Policy No. 13 SBA AE7BT5 is attached hereto as Exhibit B. Lincoln Liquor d/b/a Stove and Tap has performed all of its obligations under Policy No. 13 SBA AE7BT5, including the payment of the premium. The Covered Property and Scheduled Premises is the Stove and Tap located at 245 Lancaster Avenue, Malvern, Pennsylvania 19355.

16. In return for the payment of a premium, The Hartford issued Policy No. 13 SBA AE7DD7 to 560 Wellington Square LLC d/b/a Al Pastor, for a policy period of December 16, 2019 to December 16, 2020. Policy No. 13 SBA AE7DD7 is attached hereto as Exhibit C. 560 Wellington Square LLC d/b/a Al Pastor has performed all of its obligations under Policy No. 13 SBA AE7DD7, including the payment of the premium. The Covered Property and Scheduled Premises is Al Pastor, located at 560 Wellington Square, Exton, Pennsylvania 19341.

17. Each one of Plaintiffs' policies attached as Exhibits A-C include identical Business Income and Civil Authority endorsements.

18. In many parts of the world, property insurance is sold on a "named peril" basis. Such policies cover a risk of loss if that risk of loss is specifically listed. Most property policies sold in the United States, however, including the policies sold by The Hartford, are all-risk property damage policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded.

19. Pursuant to the "Special Property Coverage Form," Form SP 00 00 10 18, the policies cover "direct physical loss of or direct physical damage to Covered Property. . . caused by or resulting from a Covered Cause of Loss." "Covered Cause of Loss" means "direct physical loss or direct physical damage unless the loss or damage is excluded or limited in this Coverage Part."

5

20. The policies contain the Business Income endorsement and the Civil Authority endorsement. Coverage extensions provided within these endorsements include payment for lost business income, normal operating expenses incurred (including payroll expenses), extended business income during a period of restoration, and extra expenses for expenses that would not have been incurred but for the loss or damage.

21. The policies' Business Income and Civil Authority endorsements contain no exclusion for losses caused by governmental orders issued in order to prevent exposure to a virus, and no other exclusion in the policies apply to this coverage.

**B.  The Covered Cause of Loss**

22. Efforts to prevent exposure to COVID-19 have caused civil authorities throughout the country to issue orders requiring the suspension of non-essential businesses and preventing citizens from leaving home for non-essential purposes (the "Closure Orders").

23. Plaintiffs' businesses are not considered "essential," and have therefore been subject to a variety of Closure Orders by state and local authorities, preventing Plaintiffs from operating their businesses, limiting their operations, and/or from use of the covered premises for their intended purpose.

24. These Closure Orders include, but are not limited to, Pennsylvania Governor Wolf's order dated March 19, 2020 requiring all non-life-sustaining businesses in the Commonwealth to cease operations and close all physical locations.[1] The Pennsylvania Supreme Court recently clarified that the Governor's order has resulted in the temporary loss of use of non-essential business premises effected by the order, and that the order was issued to

---

[1] *Available at* https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order

protect the lives and health of millions of Pennsylvania citizens. *See Friends of DeVito v. Wolf*, No. 68 MM 2020, 2020 WL 1847100 at *17 (Pa. Apr. 13, 2020).

25. There was no presence of the COVID-19 virus at Plaintiffs' Covered Properties. Rather, Plaintiffs experienced a "Covered Cause of Loss" by virtue of the Closure Orders which denied use of the Covered Properties by causing a necessary suspension of operations during a period of restoration. The closure orders operate as a blockade that prevents employees and patrons from entering the businesses for their intended purpose.

26. This Covered Cause of Loss triggered coverage pursuant to the coverage extensions of the policies' Business Income endorsement. The Business Income coverage extension provides coverage "for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' The suspension must be caused by direct physical loss or direct physical damage to property. . . caused by or resulting from a Covered Cause of Loss." The Extended Business Income coverage extension further provides for payment of the actual loss of Business Income the insured incurs during the period that begins on the date that "property, other than finished 'stock', is actually repaired, rebuilt or replaced and 'operations' are resumed," and ends on the earlier of the date that either the insured could restore "operations" with reasonable speed, or 45 days. The Extra Expense coverage extension covers reasonable and necessary extra expenses incurred by the insured during the "period of restoration," that the insured would not have incurred if there had been no direct physical loss or direct physical damage to property

27. Consistent with the provisions of the policies' Civil Authority endorsements, the "Covered Cause of Loss" also caused a direct physical loss or damage to property *other* than at Plaintiffs' Scheduled Premises, triggering coverage under the policies' Civil Authority coverage

extension. The coverage extension provides payment for actual loss of Business Income and necessary Extra Expense incurred during the "civil authority period of restoration."

28. None of The Hartford's policy exclusions apply to Plaintiffs' claims for coverage.

29. The Special Property Coverage Form's exclusion of "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" is not applicable. Plaintiffs' Covered Cause of Loss is not the virus, but rather the effect of the Closure Orders as the presence or absence of the COVID-19 virus would have no effect upon the closure or the loss of business inasmuch as the stay at home orders apply to all non-essential businesses regardless of their exposure to the virus.

30. No other exclusions listed in the policies are applicable.

## CLASS ACTION ALLEGATIONS

31. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

32. Plaintiffs seek to represent nationwide classes defined as

> (i) All persons and entities that: (a) had Business Income, Extended Business Income, and Extra Expense coverage under a property insurance policy issued by The Hartford; (b) suffered a suspension of business related the Closure Orders, at the premises covered by The Hartford's property insurance policy; (c) made a claim under their property insurance policy issued by The Hartford; and (d) were denied Business Income coverage by The Hartford for the suspension of business resulting from the Closure Orders (the "Business Income Breach Class").

> (ii) All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by The Hartford; (b) suffered loss caused by action of a civil authority; (c) made a claim under their property insurance policy issued by The Hartford; and (d) were denied Civil Authority coverage by The Hartford for the loss caused by a Closure Order (the "Civil Authority Breach Class").

8

      (iii) All persons and entities with Business Income, Extended Business Income, and Extra Expense coverage under a property insurance policy issued by The Hartford that suffered a suspension of business due a Closure Order at the premises covered by the Business Income coverage (the "Business Income Declaratory Judgment Class").

      (iv) All persons and entities with Civil Authority coverage under a property insurance policy issued by The Hartford that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

33. Excluded from each defined Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and any governmental entities. Plaintiffs reserve the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

34. This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

35. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiffs but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

36. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

    a. whether the Class suffered a covered loss based on the common policies issued to members of the Class;

    b. whether The Hartford wrongfully denied all claims based on the wrongful application of one or more policy exclusions;

    c. whether The Hartford's Business Income coverage applies to a suspension of business caused by a Closure Order;

    d. whether The Hartford's Extended Business Income coverage applies to a suspension of business caused by a Closure Order;

    e. whether The Hartford's Extra Expense coverage applies to a suspension of business caused by a Closure Order;

    f. whether The Hartford's Civil Authority coverage applies to a loss of Business Income caused by a Closure Order;

    g. whether The Hartford has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to the Closure Orders; and

    h. whether Plaintiffs and the Class are entitled to an award of reasonable attorney fees, interest and costs.

37. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members are all similarly affected by Defendants' refusal to pay under its Business Income, Extended Business Income, Extra Expense, or Civil Authority coverages. Plaintiffs' claims are based upon the same legal theories as those of the other Class members. Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.

38.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiffs and their counsel.

39.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).**  Plaintiffs seek class-wide adjudication as to the interpretation, and resultant scope, of Defendants' Business Income, Extended Business Income, Extra Expense, and Civil Authority coverages.  The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants.

40.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

41.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT –
### BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Breach Class)**

42. Plaintiffs reallege the above paragraphs as if fully set forth herein.

43. Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Breach Class.

44. Plaintiffs' policies, as well as those of the other Business Income Breach Class members, are contracts under which The Hartford was paid premiums in exchange for its promise to pay Plaintiffs and the other Business Income Breach Class members' losses for claims covered by the policy.

45. In the Business Income and Extra Expense endorsement, The Hartford provided Business Income, Extended Business Income, and Extra Expense coverage extensions.

46. The Hartford agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

47. A "partial slowdown or complete cessation" of business activities at the Scheduled Premises is a "suspension" under the policy, for which The Hartford agreed to pay for loss of Business Income during the "period of restoration," as well as continuing normal operating expenses incurred, including payroll expenses.

48. "Business Income" means net income (or loss) before tax that Plaintiffs and the other Business Income Breach Class members would have earned "if no physical loss or damage had occurred."

49. The Extended Business Income coverage extension provides for payment of the actual loss of Business Income the insured incurs during the period that begins on the date that

"property, other than finished 'stock', is actually repaired. . . and 'operations' are resumed," and ends on the earlier of the date that either the insured could restore "operations" with reasonable speed, or 45 days.

50. The Extra Expense coverage extension provides for payment of reasonable and necessary Extra Expense an insured incurs during the "period of restoration" that the insured would not have incurred if there had been no direct physical loss or direct physical damage to property at the Scheduled Premises.

51. The Closure Orders caused direct physical loss and damage to Plaintiffs and the other Business Income Breach Class members' Scheduled Premises, requiring suspension of operations at the Scheduled Premises. Losses caused by the Closure Orders thus triggered the Business Income provision of Plaintiffs' and the other Business Income Breach Class members' policies.

52. Plaintiffs and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by The Hartford, or The Hartford is estopped from asserting them, and yet The Hartford has abrogated its insurance coverage obligations.

53. By denying coverage for any Business Income losses incurred by Plaintiffs and the other Business Income Breach Class members, The Hartford has breached its coverage obligations under the policies.

54. As a result of The Hartford's breaches of the policies, Plaintiffs and the other Business Income Breach Class members have sustained substantial damages for which The Hartford is liable, in an amount to be established at trial.

**COUNT II**
**BREACH OF CONTRACT –**
**CIVIL AUTHORITY COVERAGE**
(Claim Brought on Behalf of the Civil Authority Breach Class)

55. Plaintiffs reallege the above paragraphs as if fully set forth herein.

56. Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Breach Class.

57. Plaintiffs' policies, as well as those of the other Civil Authority Breach Class members, are contracts under which The Hartford was paid premiums in exchange for its promise to pay Plaintiffs and the other Civil Authority Breach Class members' losses for claims covered by the policy.

58. In the Business Income for Civil Authority Actions endorsement, The Hartford agreed to pay for its insureds' actual loss of Business Income and Extra Expense incurred due to the necessary suspension of its operations during the "period of restoration."

59. The Closure Orders caused direct physical loss and damage to property *other* than Plaintiffs and the other Civil Authority Breach Class members' Scheduled Premises, resulting in a prohibition of access to the Scheduled Premises. Losses caused by the Closure Orders thus triggered the Business Income for Civil Authority Actions provision of Plaintiffs' and the other Civil Authority Breach Class members' policies.

60. Plaintiffs and the other Civil Authority Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by The Hartford, or The Hartford is estopped from asserting them, and yet The Hartford has abrogated its insurance coverage obligations.

61. By denying coverage for any Civil Authority losses incurred by Plaintiffs and the other Civil Authority Breach Class members, The Hartford has breached its coverage obligations under the policies.

62. As a result of The Hartford's breaches of the policies, Plaintiffs and the other Civil Authority Breach Class members have sustained substantial damages for which The Hartford is liable, in an amount to be established at trial.

## COUNT III
## DECLARATORY JUDGMENT –
## BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

63. Plaintiffs reallege the above paragraphs as if fully set forth herein.

64. Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

65. Plaintiffs' policies, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which The Hartford was paid premiums in exchange for its promise to pay Plaintiffs and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

66. Plaintiffs and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by The Hartford, or The Hartford is estopped from asserting them, and yet The Hartford has abrogated its insurance coverage obligations.

67. The Hartford has denied claims related to Coverage Orders on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim for coverage.

68. An actual case or controversy exists regarding Plaintiffs' and the other Business Income Declaratory Judgment Class members' rights and The Hartford's obligations under the policies to reimburse Plaintiffs for the full amount of Business Income losses incurred by

Plaintiffs and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses in connection with the Closure Orders.

69. Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    a. Plaintiffs and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure Orders are insured losses under their policies; and

    b. The Hartford is obligated to pay Plaintiffs and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses.

## COUNT IV
## DECLARATORY JUDGMENT –
## CIVIL AUTHORITY COVERAGE
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

70. Plaintiffs reallege the above paragraphs as if fully set forth herein.

71. Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

72. Plaintiffs' policies, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which The Hartford was paid premiums in exchange for its promise to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

73. Plaintiffs and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of their policies and/or those provisions have been

waived by The Hartford, or The Hartford is estopped from asserting them, and yet The Hartford has abrogated its insurance coverage obligations.

74. The Hartford has denied claims related to Coverage Orders on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim for coverage.

75. An actual case or controversy exists regarding Plaintiffs' and the other Civil Authority Declaratory Judgment Class members' rights and The Hartford's obligations under the policies to reimburse Plaintiffs for the full amount of Business Income and Extra Expense losses incurred by Plaintiffs and the other Civil Authority Declaratory Judgment Class members in connection with suspension of their businesses in connection with the Closure Orders.

76. Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

　　a. Plaintiffs and the other Civil Authority Declaratory Judgment Class members' losses incurred in connection with the Closure Orders are insured losses under their policies; and

　　b. The Hartford is obligated to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class members for the full amount of the covered losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

     a.    Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiffs as Class representative, and appointing Plaintiffs' undersigned attorneys as Counsel for the Classes;

     b.    Entering judgment on Counts I-II in favor of Plaintiffs and the members of the Business Income Breach Class and the Civil Authority Breach Class, and awarding damages for breach of contract in an amount to be determined at trial;

     c.    Entering declaratory judgments on Counts III-IV in favor of Plaintiffs and the members of the Business Income Declaratory Judgment Class and the Civil Authority Declaratory Judgment Class as follows:

          i.    Business Income, Extended Business Income, Extra Expense, and Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses are insured losses under their policies; and,

          ii.    The Hartford is obligated to pay for the full amount of the Business Income, Extended Business Income, Extra Expense, and Civil Authority losses incurred and to be incurred related to the Closure Orders and the necessary interruption of their businesses;

     d.    Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

     e.    Ordering Defendants to pay attorneys' fees, reasonable expenses and costs of suit; and

     f.    Ordering such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury as to all issues stated herein, and all issues so triable.

Dated:  April 27, 2020　　　　　　　　　　　　**BARRACK, RODOS & BACINE**

　　　　　　　　　　　　　　　　　　　　　By:＿＿s/ Jeffrey A. Barrack＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　Daniel E. Bacine (PA 16742)
　　　　　　　　　　　　　　　　　　　　　　　Mark R. Rosen (PA 31231)
　　　　　　　　　　　　　　　　　　　　　　　Jeffrey A. Barrack (PA 78438)
　　　　　　　　　　　　　　　　　　　　　　　Meghan J. Talbot (PA 322308)
　　　　　　　　　　　　　　　　　　　　　　　3300 Two Commerce Square
　　　　　　　　　　　　　　　　　　　　　　　2001 Market Street
　　　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103

　　　　　　　　　　　　　　　　　　　　　　　　　　　and

　　　　　　　　　　　　　　　　　　　　　　　Stephen R. Basser
　　　　　　　　　　　　　　　　　　　　　　　One America Plaza
　　　　　　　　　　　　　　　　　　　　　　　600 W. Broadway, Suite 900
　　　　　　　　　　　　　　　　　　　　　　　San Diego, CA 92101

　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*