**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Lansdale 329 Prop, LLC, 329 Mainlans, LLC, and Lincoln Liquor LLC d/b/a Stove and Tap; 560 Wellington Square Associates LLC d/b/a Al Pastor; individually and on behalf of all others similarly situated, | ) ) ) ) ) | C/A NO.: 2:20-cv-02034-TJS |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Hartford Underwriters Insurance Company and The Hartford Financial Services Group, Inc. d/b/a The Hartford. | ) ) ) | |
| Defendants. | ) | |

---

**BRIEF IN SUPPORT OF HARTFORD UNDERWRITERS INSURANCE COMPANY'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

---

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................. 3

    A.   The Policies ................................................................................................. 3

    B.   Plaintiffs' Complaint .................................................................................. 4

III.  LEGAL STANDARDS ...................................................................................... 5

    A.   Standard for a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) ................ 5

    B.   The Plain and Unambiguous Terms of the Virus Exclusion Govern ............... 7

IV.   ARGUMENT ...................................................................................................... 8

    A.   The Virus Exclusion Bars Coverage ........................................................... 8

        1.   The Restaurants' Losses Are Excluded Because They Are Caused by the Coronavirus ......................................................................................... 8

        2.   The Governmental Orders Aimed At Slowing the Spread of the Coronavirus Do Not Impact the Applicability of the Virus Exclusion ....................................................... 11

    B.   Plaintiffs Allege They Experienced No Direct Physical Loss to Their Property, Which Removes Any Possibility of Coverage Under the Policies........................................... 16

    C.   Plaintiffs Cannot Establish Entitlement To Civil Authority Coverage ......................... 18

V.    CONCLUSION................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166 (Pa. 2005) ................................... 7

*730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) ............. 20

*Alea London Ltd. v. Rudley*, No. Civ.A. 03-CV-1575, 2004 WL 1563002 (E.D. Pa. July 13, 2004) ............................................................................ 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 6

*Baker v. Metro. Prop. & Cas. Ins. Co.,* No. 3:12-CV-01231, 2013 WL 5308196 (M.D. Pa. Sept. 19, 2013) ............................................................................ 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 6

*Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506 (3d Cir. 2011) ........................................ 6

*Brodzinski v. State Farm Fire & Cas. Co.*, No. CV 16-6125, 2017 WL 3675399 (E.D. Pa. Aug. 25, 2017) ........................................................................... 12

*Certain Underwriters at Lloyds of London v. Creagh*, 563 F. App'x 209 (3d Cir. 2014)............. 9

*Cleland Simpson Co. v. Fireman's Ins. Co.,* 11 Pa.D. & C.2d 607 (Ct. of Com. Pl. 1957)*, aff'd without opinion,* 140 A.2d 41 (Pa. 1958)........................................................ 13, 21

*Colella v. State Farm Fire & Cas. Co.*, 407 F. App'x 616 (3d Cir. 2011) ............................ 11

*Commstop v. Travelers Indem. Co. of Conn.*, No. 11-1257, 2012 WL 1883461 (W.D. La. May 17, 2012) ............................................................................ 19

*Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706 (Pa. Commw. Ct. 2005) .............................................................................. 7

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011) .......................... 21

*Fischbein v. Olson Research Grp., Inc.,* 959 F.3d 559 (3d Cir. 2020) ................................. 6

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham County, July 1, 2020)......................................................................... 10, 17

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187 (3d Cir. 2009)............................. 6

*Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 517 A.2d 910 (Pa. 1986) ................. 7

*Girard Trust Bank v. Life Ins. Co. of N. Am.*, 364 A.2d 495 (Pa. Super. Ct. 1976) ................... 15

*Hammersmith v. TIG Ins. Co.*, 480 F.3d 220 (3d Cir. 2007) ......................................... 7

*Heller's Gas, Inc. v. Int'l Ins. Co. of Hannover Ltd*., No. 4:15-CV-01350, 2017 WL 4119809
(M.D. Pa. Sept. 18, 2017) ................................................................... 11

*In re Old Summit Mfg., LLC*, 523 F.3d 134 (3d Cir. 2008) ..................................... 7

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of
Hartford*, 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007)........................ 19

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-CV-00693, 2020 WL
886120 (D.S.C. Feb. 24, 2020) ................................................................ 20

*Lambi v. Am. Family Mut. Ins. Co.*, No. 4:11- CV-00906, 2012 WL 2049915 (W.D. Mo. June 6,
2012) ................................................................................................ 10

*Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100 (Pa. 1999)................. 7

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) ...................................... 7, 9

*Mount Pocono Motel Inc. v. Tuscarora Wayne Ins. Co*., No. 9534 CIVIL 2013, 2014 WL
11351696 (Pa. Ct. Com. Pl. July 8, 2014) ......................................... 8, 10

*Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc*., 320 F. Supp. 3d 636 (E.D. Pa. 2018) (Savage, J.),
*aff'd*, 781 F. App'x 57 (3d Cir. 2019) ................................................. 6

*Nautilus Ins. Co. v. Shawn Owens Inc.,* 316 F. Supp. 3d 873 (E.D. Pa. 2018)............... 6

*Neitzke v. Williams*, 490 U.S. 319 (1989) ................................................... 6

*Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.*, No. 1:10-cv-54, 2011 WL 13214381
(E.D. Tex. Mar. 30, 2011)...................................................................... 21

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154, 2004 WL 5704715 (N.D. Ga.
Dec. 15, 2004)................................................................................. 19, 20

*Prime Alliance Group, Ltd. v. Hartford Fire Insurance Co*., No. 06-22535-CIV-UNGARO, 2007
WL 9703576 (S.D. Fla. Oct. 19, 2007)........................................... 13, 15

*S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004) ............... 19

*S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, Civil Action No. H-06-4041, 2008 WL 450012
(S.D. Tex. Feb. 15, 2008)...................................................................... 21

*Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*, 105 F. Supp. 3d 464 (E.D. Pa. 2015)......... 7, 9

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-cv-2391, 2010 WL 2696782 (M.D. Pa.
July 6, 2010)................................................................................... 19

*Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-3311 (S.D.N.Y. May 14, 2020) 17

*Stern Enterprises, Inc. v. Penn State Mut. Ins. Co.,* 302 A.2d 511 (Pa. Super. Ct. 1973)............ 15

iii

*Steuart v. McChesney*, 444 A.2d 659 (Pa. 1982) .......................................................... 7

*T.H.E. Ins. Co. v. Charles Boyer Children's Tr.*, 455 F. Supp. 2d 284 (M.D. Pa. 2006), *aff'd,* 269
F. App'x 220, 223 (3d Cir. 2008) .......................................................................... 12

*United Air Lines v. Insurance Company of the State of Pennsylvania*, 439 F.3d 128 (2d Cir.
2006) ................................................................................................................. 20

*United States v. Sunoco*, 637 F. Supp. 2d 282 (E.D. Pa. 2009) ...................................... 7

*USX Corp. v. Liberty Mut. Ins. Co.,* 444 F.3d 192 (3d Cir. 2006)................................. 15

**Statutes**

28 U.S.C. § 2201 ............................................................................................................ 5

## I.     INTRODUCTION

Plaintiffs,[1] owners and operators of three restaurants, seek to recover for purported losses they incurred when dine-in services at their restaurants were disallowed "to prevent potential exposure to COVID-19", the novel coronavirus.  Compl. ¶ 3.  Plaintiffs claim their property insurer, Defendant Hartford Underwriters Insurance Company ("Hartford"), covers their virus-related losses.  The Policies do not cover Plaintiffs' losses for at least three reasons.

First, the policies do not cover losses caused by a virus.  The policies provide that Hartford "will not pay for loss or damage caused directly or indirectly by  . . . Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  ("Virus Exclusion"), Compl. Ex. A, at 29, 31; Exs. B-C, at 28, 30.  The novel coronavirus (SARS-CoV-2) undisputedly is a "virus . . . that induces or is capable of inducing physical distress, illness or disease", and Plaintiffs' alleged losses were "caused directly or indirectly" by it.  Plaintiffs explicitly allege that "[e]fforts to prevent exposure to COVID-19", have limited their operations and caused their losses.  Compl. ¶ 22; *id.* ¶ 3 ("prevent potential exposure to COVID-19").

Plaintiffs nonetheless attempt to avoid the Virus Exclusion by arguing that the cause of their losses is not the virus itself but governmental orders aimed at slowing the spread of the virus.  That argument fails for at least two reasons: (1) the Virus Exclusion still applies to orders of civil authority because the virus only needs to be *one* cause of loss, not the sole cause of loss and (2) orders of civil authorities are not themselves "Covered Causes of Loss" under the terms of the policies and, thus, do not themselves trigger coverage for lost business income.  Simply

---

[1] Plaintiffs refers to Lansdale 329 Prop, LLC; 329 Mainlans, LLC; Lincoln Liquor LLC d/b/a Stove and Tap; and 560 Wellington Square Associates LLC d/b/a Al Pastor.

put, Plaintiffs cannot sidestep the plain fact that their alleged losses are caused by the novel coronavirus, an excluded peril.

Second, even if the Virus Exclusion did not apply, Plaintiffs still would not be entitled to business income coverage because they do not allege any direct physical loss or damage to their property.  The policies only provide business income coverage if Plaintiffs' operations are suspended because of "direct physical loss of or physical damage to property."  *See* Ex. C at 68. Plaintiffs expressly allege they experienced *no* physical loss at all:  "Plaintiffs' insured premises did not experience any known presence of, suspected presence of, or exposure to the COVID-19 virus."  *See* Compl. ¶ 3; *see id.* ¶ 25 ("no presence of the COVID-19 virus").

Third, again assuming that the Virus Exclusion does not apply, Plaintiffs are not entitled to "civil authority" coverage because they have not alleged any facts showing that property "within one mile" of the insured premises experienced "direct physical loss or direct physical damage," which caused an "action of civil authority" to "prohibit[] access" to the insured premises.  *See* Ex. C at 79.   Indeed, Plaintiffs meet none of these requirements:  (1) access to their premises was not prohibited (Plaintiffs could still engage in carryout and delivery services), (2) Plaintiffs do not allege any harm to any property, and (3) Plaintiffs admit the orders of civil authority were to limit the spread of coronavirus, not because of property damage.  Civil authority coverage simply does not apply where, as here, the orders were issued because of fear of future harm, not existing property damage.

While Hartford does not dispute that measures to slow the spread of the novel coronavirus have resulted in broad disruption to the economy, the unprecedented economic fallout from a global pandemic does not provide a basis to override the plain terms of an insurance contract. Each claim for relief is premised on the policies providing coverage for alleged virus-related

2

business losses.  It is clear from the pleadings that Plaintiffs are not entitled to any such coverage.  Where, as here, the claims of the named plaintiffs fail as a matter of law, the putative class action complaint should be dismissed in its entirety with prejudice.

## II.     STATEMENT OF FACTS

### A.     The Policies

Hartford issued insurance policies to Plaintiffs,[2] which are attached to the Complaint as Exhibits A, B, and C, (together the "Policies").  Compl. ¶¶ 14-16.   The Policies provide that "[Hartford] will pay for direct physical loss of or direct physical damage to Covered Property. . . caused by or resulting from a Covered Cause of Loss."  Ex. C at 26.   The Business Income and Extra Expense coverage grant provides in pertinent part as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss or direct physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

Ex. C at 68.

The Civil Authority coverage grant provides in pertinent part as follows:

> When a Covered Cause of Loss causes direct physical loss or direct physical damage to property other than at the "scheduled premises", we will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur during the "civil authority period of restoration" caused by action of civil authority

---

[2] Hartford issued Policy No. 13 SBA AE7GUH to Lansdale 329 Prop, LLC and 329 Mainlans, LLC d/b/a Stove and Tap, for a policy period of February 1, 2020 to February 1, 2021, (Compl. ¶ 14); Policy No. 13 SBA AE7BT5 to Lincoln Liquor, LLC d/b/a Stove and Tap, for a policy period of December 16, 2019 to December 16, 2020 (Compl. ¶ 15); and Policy No. 13 SBA AE7DD7 to 560 Wellington Square LLC d/b/a Al Pastor (Compl. ¶ 16).  For ease of reference, Hartford cites to only one policy throughout this motion, but the terms cited do not differ between the three policies at issue.

that prohibits access to the "scheduled premises" provided that both of the following apply:

(a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the "scheduled premises" are within that area but are not more than one mile from the damaged property; and

(b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Ex. C at 79.  As is evident, all of the coverage grants described above share a common

denominator – there must be direct physical loss or direct physical damage to property caused by

a "Covered Cause of Loss" to trigger coverage under the Policies.  A "Covered Cause of Loss" is

defined as "direct physical loss or direct physical damage" unless otherwise excluded under the

Policies.  Ex. C at 27.

Importantly, the Policies also contain a virus exclusion, which states:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

\* \* \*

***Any virus***, bacterium or other microorganism that ***induces or is capable of inducing physical distress, illness or disease.***

Ex. C. at 30 ("Virus Exclusion").[3]

### B.    Plaintiffs' Complaint

Plaintiffs allege that they suspended or reduced business at their "restaurants due to

orders issued by civil authorities in Pennsylvania mandating the suspension of business for on-

---

[3] The Policies each have "Limited Fungi, Bacteria or Virus Coverage" that is not alleged to apply here.  *See, e.g.*, Ex. C at 76 (Form SP 30 17 10 18).  The limited coverage "only applies" (1) when the virus results from a "specified cause of loss" other than fire or lightning or (2) as a result of an equipment breakdown accident.

site services to prevent potential exposure to COVID-19."  Compl. ¶ 3.  According to Plaintiffs,

these civil authority orders, or "Closure Orders," were issued "to prevent exposure to COVID-

19."  Compl. ¶ 22.  Plaintiffs do not specify particular closure orders except the March 19, 2020

order of Pennsylvania Governor Wolf.  *See id.* ¶ 24.  The March 19 order expressly allowed

restaurants, such as Plaintiffs, to continue offering "carry-out, delivery, and drive-through food

and beverage service . . . so long as social distancing and other mitigation measures are

employed to protect workers and patrons."  *See* March 19 order, *available at*

https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-

Order (last visited June 23, 2020).

Plaintiffs allege their insured premises did not experience any known presence of,

suspected presence of, or exposure to the COVID-19 virus.  Compl. ¶ 3; 25.  Rather, Plaintiffs

allege that they have experienced a "Covered Cause of Loss" by virtue of the Closure Orders,

which denied use of the Covered Properties by causing a necessary suspension of operations

during a period of restoration.  They further allege that the "closure orders operate as a blockade

that prevents employees and patrons from entering the businesses for their intended purpose."

Compl. ¶ 25.

Plaintiffs' Complaint asserts four claims for relief.  Counts I and II are breach of contract

claims for business income and civil authority coverage, respectively.  Counts III and IV mirror

the allegations in Counts I and II respectively and seek declaratory relief under 28 U.S.C. § 2201

regarding Plaintiffs' entitlement to coverage under these provisions.

## III.   LEGAL STANDARDS

### A.   Standard for a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  "Factual allegations must be enough to raise a right to relief above the speculative level," and where they do not adequately plead "a claim of entitlement to relief," dismissal is warranted.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558 (2007); *Fischbein v. Olson Research Grp., Inc.,* 959 F.3d 559, 561 (3d Cir. 2020) (on a motion to dismiss, "we disregard threadbare recitals of the elements of a cause of action, legal conclusions and conclusory statements").  Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

Courts in this Circuit routinely grant motions to dismiss in insurance cases when the plaintiff's allegations fall squarely within the policy's exclusions to coverage.  *Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011) (affirming dismissal of complaint because the unambiguous policy exclusion applied as a matter of law); *Nautilus Ins. Co. v. Shawn Owens Inc.,* 316 F. Supp. 3d 873, 878 (E.D. Pa. 2018) (finding exclusion barred insurance coverage under policy and granting insurer's Rule 12(c) motion); *Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 320 F. Supp. 3d 636, 643 (E.D. Pa. 2018) (Savage, J.), *aff'd*, 781 F. App'x 57 (3d Cir. 2019) (granting insurer's Rule 12(c) motion because the assault and battery exclusion comprehensively barred all conduct alleged).

In deciding a Rule 12(b)(6) motion, a court can consider exhibits attached to the complaint.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Thus, the Court can consider the terms of the Policies in ruling on Hartford's Rule 12(b)(6) motion.

### B.      The Plain and Unambiguous Terms of the Virus Exclusion Govern

Under Pennsylvania law,[4] "[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement." *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008) (citing *Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Commw. Ct. 2005)); *United States v. Sunoco*, 637 F. Supp. 2d 282, 287 (E.D. Pa. 2009); *Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986).

When the language of an insurance policy is clear and unambiguous, a court applying Pennsylvania law is required to give effect to that language.  *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005); *see also Sentinel Ins. Co. Ltd. v. Monarch Med Spa, Inc.*, 105 F. Supp. 3d 464, 471 (E.D. Pa. 2015).  While insurers have the burden of proving that an exclusion applies to bar coverage, courts may not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity."  *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (citing *Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982)).  Where, as here, an exclusion applies to bar coverage, the Court need not address coverage under other policy provisions.  *Mount Pocono Motel Inc. v. Tuscarora Wayne Ins. Co.*, No. 9534 CIVIL 2013, 2014 WL 11351696, at *4 (Pa. Ct. Com. Pl. July 8, 2014) (deciding the "fungi" exclusion bars recovery for damages under either of the theories raised by the Plaintiff).

---

[4] Under Pennsylvania's choice of law rules, a contract is construed according to the law of the state with the "most significant contacts or relationship with the contract." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227-28 (3d Cir. 2007).  The Policies were issued to Plaintiffs in Pennsylvania and provide coverage per the terms of the Policies for insured properties located in Pennsylvania.  Compl.  ¶¶ 13-16.  Accordingly, Hartford assumes for purposes of this Motion that Pennsylvania law applies.

**IV.     ARGUMENT**

    **A.     The Virus Exclusion Bars Coverage**

        **1.     The Restaurants' Losses Are Excluded Because They Are Caused by the Coronavirus**

The Virus Exclusion unambiguously bars coverage for Plaintiffs' claim.  The Policies provide that Hartford "will not pay for loss or damage caused directly or indirectly by. . . [a]ny virus . . . that induces or is capable of inducing physical distress, illness or disease."  Ex. C at 30.  The exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" and "whether or not the loss event results in widespread damage or affects a substantial area."  Ex. C at 28.

Plaintiffs' alleged loss falls squarely within the exclusion.  Plaintiffs allege that the coronavirus is a virus, *see* Compl. ¶¶ 3, 25, 29, and no one disputes that it "induces or is capable of inducing physical distress, illness or disease."  *See, e.g.*, Compl. ¶ 24 (governmental orders regarding COVID-19 were meant to "protect the lives and health of millions of Pennsylvania citizens").

While Plaintiffs try to avoid it (see part IV.A.2 below), the Complaint makes clear that the virus is the direct or indirect cause of Plaintiffs' losses.  Plaintiffs allege their losses stem from governmental orders that disallowed dine-in eating at their restaurants "*to prevent exposure to COVID-19.*"  Compl. ¶¶ 3, 22 (emphasis added).  Moreover, the sole governmental order the Complaint cites— Pennsylvania Governor Wolf's order dated March 19, 2020— provides that restaurants "have been ordered to close to their dine-in facilities ***to help stop the spread of COVID-19.***"[5]  *See* Compl. ¶ 24 (emphasis added).  The governmental orders Plaintiffs reference

---

    [5] This Court can consider this Order on a 12(b)(6) motion to dismiss because it is incorporated by reference into the Complaint.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir.

undisputedly exist solely to reduce or limit the spread of the virus.  They are not causally distinct from the virus itself.  That is, Plaintiffs' restaurants would not have been closed to dine-in customers but for the existence of the coronavirus.  Accordingly, the claims fall squarely within the Virus Exclusion and there is no coverage.

The Third Circuit faced a similar issue in *Certain Underwriters at Lloyds of London v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014).  There, the plaintiff attempted to avoid a microorganism exclusion by arguing that its damages arose from remediation work aimed at removing a smell, not bacteria, because bacteria losses were excluded.  *Id.*  The Third Circuit rejected the argument: "Under the microorganism exclusion, it suffices that the smell and other damages 'directly or indirectly [arose] out of' the bacteria, which caused the fluid to escape the body and grew in the fluid after it left the body."  *Id.*  Just as in *Creagh*, "it suffices" that the governmental orders here arose directly or indirectly out of the virus, and there is no coverage under the Policies.

This Court has upheld similarly unambiguous exclusions barring coverage for losses caused by hazardous substances or microorganisms.  For example, in *Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*, 105 F. Supp. 3d 464 (E.D. Pa. 2015), the court enforced an exclusion for fungi, bacteria, and virus against claims for bacterial infections resulting from certain surgeries.  *Id.* at 472 (enforcing exclusion of coverage for "[i]njury or damage arising out of or related to the presence of, suspected presence of, or exposure to fungi, bacteria and virus" based on showing that Group A Streptococcus is a bacterium); *see also Alea London Ltd. v. Rudley*,

---

2010) ("In deciding a Rule 12(b)(6) motion, a court can consider matters of public record and undisputedly authentic documents if the complainant's claims are based upon these documents.") This Court also may take judicial notice of the Order.  Fed. R. Evid. 201.  This Order is available at https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order.

No. Civ.A. 03-CV-1575, 2004 WL 1563002, at *3 (E.D. Pa. July 13, 2004) (mold exclusion bars coverage for suit alleging mold contamination).  Pennsylvania courts have also enforced similar exclusions as unambiguous.  *Mount Pocono Motel Inc. v. Tuscarora Wayne Ins. Co*., No. 9534 CIVIL 2013, 2014 WL 11351696, at *4 (Pa. Com. Pl. July 8, 2014) (ruling that the "Fungi or Bacteria exclusion" was clear and unambiguous and barred claims arising from mold).  Other courts are in accord in interpreting virus exclusions.  *See, e.g.*, *Lambi v. Am. Family Mut. Ins. Co.*, No. 4:11- CV-00906, 2012 WL 2049915, at *4-5 (W.D. Mo. June 6, 2012) (communicable disease exclusion in homeowners' policy barred insurance coverage for virus claims), *aff'd*, 498 F. App'x 655 (8th Cir. 2013).

Moreover, on July 1, 2020, a Michigan trial court addressed coverage for COVID-19 business income claims just like those at issue here.  *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Circuit Court, Ingham County, July 1, 2020).  The court in *Gavrilides* concluded that the insured could not demonstrate any direct physical loss to its property but, even if it had, the unambiguous virus exclusion – which was substantially the same as Plaintiffs' – would bar coverage.  *See* Ex. 1 at 22 ("But, there is a virus exclusion that would also apply.").[6]

The same is true here.  Plaintiffs' claims are barred by the unambiguous terms of the Virus Exclusion and the Complaint should be dismissed in its entirety.

---

[6] Transcript of Oral Argument on Defendant's Motion for Summary Disposition, *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, Case No. 20-258-CB-C30, at 10, 22-23 (Mich. Circuit Court, Ingham County, July 1, 2020).  The court's order and transcript of the oral argument and decision from the bench is attached hereto as Exhibit 1.

### 2. The Governmental Orders Aimed At Slowing the Spread of the Coronavirus Do Not Impact the Applicability of the Virus Exclusion

Plaintiffs nonetheless attempt to plead around the Virus Exclusion by alleging that the cause of their loss is the governmental orders aimed at slowing the spread of the virus, not the virus itself. *See* Compl. ¶ 29. That argument fails for at least two reasons: (1) at least one cause of Plaintiffs' losses is the virus, and the plain language of the Policies exclude virus losses "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" (*see* Ex. C at 28; 30); and (2) orders of civil authority are not Covered Causes of Loss.

### a. The Virus Is a Cause of Plaintiffs' Losses, Which Necessitates the Application of the Virus Exclusion

By its plain terms, the Virus Exclusion applies so long as virus is *one* cause of loss; it need not be the sole cause of loss. The policies provide: "Such loss or damage is excluded ***regardless of any other cause or event that contributes concurrently or in any sequence to the loss.***" Compl. Ex. C at 28 (emphasis added). This language is referred to as an anti-concurrent causation clause, and its purpose is to provide certainty to the parties as to coverage when there are multiple alleged causes of a loss. So long as one contributing cause is excluded, this anti-concurrent causation language ensures the loss is not covered.

Here, the virus is the only cause of the loss (as detailed below). However, even if the virus were just a cause of the loss, the Virus Exclusion would still bar coverage because of the anti-concurrent causation clause. *See, e.g.*, *Colella v. State Farm Fire & Cas. Co.*, 407 F. App'x 616, 622 (3d Cir. 2011) (anti-concurrent causation clause in insurance policy "negates the application" of the state's causation law) (applying Pennsylvania law); *see Heller's Gas, Inc. v. Int'l Ins. Co. of Hannover Ltd.*, No. 4:15-CV-01350, 2017 WL 4119809, at *12–13 (M.D. Pa. Sept. 18, 2017) ("The explicit inclusion of this [anti-concurrent causation] language negates the default 'efficient proximate cause' doctrine under Pennsylvania law.").

11

Courts in this Circuit have routinely held that anti-concurrent causation clauses unambiguously exclude coverage where there are multiple causes of loss.  For instance, in a 2006 Middle District of Pennsylvania case, the insurance policy had an exclusion for losses caused by surface water, with a lead-in clause identical to the one in the Policies in this case: "We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."  *T.H.E. Ins. Co. v. Charles Boyer Children's Tr*., 455 F. Supp. 2d 284, 288 (M.D. Pa. 2006), *aff'd,* 269 F. App'x 220, 223 (3d Cir. 2008).  The court held that the unambiguous language of this provision barred coverage because surface water was one of the causes of the insured's loss.  *Id.* at 298.  The court determined that, whether a covered risk may have contributed to the loss was irrelevant in light of the anti-concurrent clause.  *Id.*; *see also Baker v. Metro. Prop. & Cas. Ins. Co.,* No. 3:12-CV-01231, 2013 WL 5308196, at *11 (M.D. Pa. Sept. 19, 2013) (cause of loss is irrelevant when excluded by anti-concurrent clause); *Brodzinski v. State Farm Fire & Cas. Co*., No. CV 16-6125, 2017 WL 3675399, at *5 (E.D. Pa. Aug. 25, 2017) (coverage for claims for mold and rot prohibited by anti-concurrent clause excluding water damage).

Because the coronavirus undisputedly is at least *a* cause of Plaintiffs' losses, there is no coverage under the policies.

### b.    Orders of Civil Authority Are Not Covered Causes of Loss

Notably, however, this is not a case where there are two causes of loss.  The virus – "COVID-19" – is the only alleged Covered Cause of Loss.  To be sure, Plaintiffs contend their losses were also caused by governmental orders.  *See* Compl. ¶¶ 3, 25.  But governmental orders do not constitute a Covered Cause of Loss and, therefore, cannot trigger coverage under the Policies.

A federal district court in Florida addressed this issue directly and expressly rejected a policyholder's attempt to characterize an order of civil authority as a risk of direct physical loss. *See Prime Alliance Group, Ltd. v. Hartford Fire Insurance Co*., No. 06-22535-CIV-UNGARO, 2007 WL 9703576 (S.D. Fla. Oct. 19, 2007).  There, the policyholder suffered losses as a result of an order to evacuate issued in connection with Hurricane Frances making landfall in South Florida.  *Id*. at *1.  The losses did not exceed the policy's deductible for "windstorm" but did exceed the "standard" deductible.  *Id*. at *1-2.  Thus, a key issue for the court was whether the cause of loss was "windstorm" or a peril that would be subject to the standard deductible.

The policyholder asserted "that the windstorm deductible is inapplicable to their claim because their business interruption losses were caused not by a windstorm but by an order of civil authority, a separate peril."  *Id*. at *3.  The court rejected that argument:  "No matter how much Plaintiffs would like to believe that interruption by civil or military authority is a separately listed named peril, the structure and language of the policy, when read as a whole, says otherwise."  *Id*. at *4 (quotations omitted).  The court concluded: "The order of civil authority cannot in any reasonable manner be construed as a 'peril'", where "perils insured against" included "all risk of direct physical loss." *Id*. at *1, *4.[7]

Here, as in *Prime Alliance*, the entire structure and wording of the Policies make clear that civil authority is not a peril or a Covered Cause of Loss, but instead is an *extension* of coverage in certain well-defined and limited circumstances.[8]  The Policies require that "[t]he

---

[7] *Cf. Cleland Simpson Co. v. Fireman's Ins. Co.,* 11 Pa.D. & C.2d 607 (Ct. Com. Pl. 1957)*, aff'd without opinion,* 140 A.2d 41 (Pa. 1958) (evaluating whether the order closing business resulted from a covered cause of loss and finding no coverage because the action was taken to prevent a covered peril).

[8] The Business Income for Civil Authority Actions provision states that it "is added to Paragraph A.6., ***Coverage Extensions***".  Ex. C at 79 (emphasis added).

action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage". Ex C at 79. Because the Policies require the civil authority action be taken *in response* to a Covered Cause of Loss, the civil authority action cannot itself be a Covered Cause of Loss. Plaintiffs' argument that the governmental orders constitute a Covered Cause of Loss contravenes the plain text of the Policies.

Instead, the Policies define "Covered Cause of Loss" as "direct physical loss or direct physical damage unless the loss or damage is excluded or limited in this Coverage Part". Ex. C at 26. The governmental orders that purportedly prohibit access to Plaintiffs' property are clearly not a "direct physical loss or direct physical damage." Rather, the orders are governmental measures taken to avoid or mitigate the effects of a transmissible virus to humans.

The purpose of Civil Authority coverage is to **extend** coverage to a specific situation that would not otherwise be covered under the Policies. The "Coverage Extension[]" applies *only* "[w]hen a Covered Cause of Loss causes direct physical loss or direct physical damage to property **other than at the 'scheduled premises[.]'"** Ex. C at 79. That is, the Civil Authority provision applies when there is direct physical loss or damage to property **other than Plaintiffs' property**.

Nothing in the Policies, however, suggests that this limited extension of coverage changes the scope of the definition of "Covered Cause of Loss". For example, nothing in the Civil Authority provision mentions, much less changes, the requirement that a Covered Cause of Loss must be a "direct physical loss or direct physical damage." To the contrary, the provision requires – just like the Business Income and Extra Expense Coverage – "direct physical loss or direct physical damage to property." Ex. C at 68-69.

14

Not only would Plaintiffs' reading be inconsistent with the plain wording of the Policies, it would render provisions of the Policies meaningless, which Pennsylvania law does not allow. "Pennsylvania courts long have admonished that 'contract terms will not be construed in such a manner so as to render them meaningless.'" *USX Corp. v. Liberty Mut. Ins. Co.,* 444 F.3d 192, 200 (3d Cir. 2006) (quoting *Girard Trust Bank v. Life Ins. Co. of N. Am.*, 364 A.2d 495, 498 (Pa. Super. Ct. 1976)) (reversing district court's construction that would effectively read a clause out of the policy); *see also Stern Enterprises, Inc. v. Penn State Mut. Ins. Co.,* 302 A.2d 511, 513 (Pa. Super. Ct. 1973) (declining to construe the word 'solely' in the way urged by the insured that would "render meaningless and null and void" conditions for coverage).

Treating a governmental order as a Covered Cause of Loss would render the "Coverage Extension" for "Business Income for Civil Authority Actions" superfluous. It would also eliminate the requirement that "Business Income" coverage[9] be premised on direct physical loss or direct physical damage. Indeed, if a governmental order were a Covered Cause of Loss, there would be no need for "Coverage Extension" for civil authority; it would already exist under the Business Income coverage. *See* Ex. C at 68.

Simply put, a civil authority order "cannot in any reasonable manner" be construed as a Covered Cause of Loss under the plain terms of the Policies. *See Prime Alliance*, 2007 WL 9703576, at *4. Thus, there is only one peril that caused Plaintiffs' loss – the coronavirus – and

---

[9] As detailed above (*see* Statement of Facts), "Business Income" is a "Coverage Extension" in the Policies. It provides coverage for loss sustained during a suspension of Plaintiffs' operations, provided the suspension is "caused by direct physical loss of or direct physical damage to" Plaintiffs' covered property that is "caused by or resulting from a Covered Cause of Loss", *i.e.*, direct physical loss or direct physical damage. That is, if Plaintiffs' business is suspended because of what otherwise would be covered under the "Coverage" provision, Hartford will pay for those business income losses (subject to the Policies' other terms, conditions and limitations).

it is excluded.  Accordingly, there is no coverage under the Policies for any of Plaintiffs' claims,

and the Complaint should be dismissed in its entirety.

### B.      Plaintiffs Allege They Experienced No Direct Physical Loss to Their Property, Which Removes Any Possibility of Coverage Under the Policies

Even if the Virus Exclusion were not applicable (it is), dismissal would still be

appropriate.  To recover for business income losses (Counts I and III), Plaintiffs are required to

demonstrate, among other things, "direct physical loss or damage to property at the 'scheduled

premises'."  *See, e.g.*, Ex. C at 68.  Likewise, for civil authority coverage (Counts II and IV),

Plaintiffs must demonstrate, among other things, a "Covered Cause of Loss" that "causes direct

physical loss or direct physical damage to property other than at the 'scheduled premises'."  *See,*

*e.g.*, Ex. C at 27, 79.

Plaintiffs admit that they have experienced no direct physical loss: "There was no

presence of the COVID-19 virus at Plaintiffs' Covered Properties."  *See* Compl. ¶ 25; *id.* ¶ 3

("Plaintiffs' insured premises did not experience any known presence of, suspected presence of,

or exposure to the COVID-19 virus.").  Further, Plaintiffs do not raise a single allegation of

"direct physical loss or direct physical damage" to property "not more than one mile from" its

premises.  *See* Ex. C. at 79.  Therefore, the coronavirus undisputedly did not cause direct

physical loss or physical damage to property in this case because COVID-19 was not present on

Plaintiffs' properties and there is no allegation it caused property loss or damage anywhere

nearby.  *See* Compl. ¶ 25.

Moreover, to recover for business income losses, the Policies require that the ***cause*** of

Plaintiffs' business interruption must be direct physical loss or direct physical damage to

property.  The Policies provide:  "The suspension must be caused by direct physical loss or direct

physical damage to property."  *See* Ex. C at 68.  That is, Plaintiffs must demonstrate: (1) that

they experienced direct physical loss or direct physical damage to property, ***and*** (2) that the cause of their business interruption was the direct physical loss or damage to their property. Plaintiffs explicitly allege they do not meet the first requirement, as outlined above.  *See* Compl. ¶¶ 3, 25.  The same is true of the second requirement.  Plaintiffs undisputedly allege their businesses were interrupted ***because*** of governmental orders aimed at keeping people apart, not because of anything physical occurring to their properties.  *See, e.g.*, Compl. ¶ 3 (closure "due to orders issued by civil authorities in Pennsylvania mandating the suspension of business for on-site services to prevent potential exposure to COVID-19."); *id.* ¶ 25 ("closure orders operate as a blockade").  Thus, Plaintiffs do not allege that the suspension of their restaurants was "caused by direct physical loss or damage to property."  *See* Ex. C at 68.

Hartford is aware of only two courts in the country thus far that have addressed whether business income losses incurred because of COVID-19 were caused by direct physical loss or damage to property.  In both instances, the courts concluded there was no physical loss or damage to property.  In *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham County, July 1, 2020), noted above, the Court ruled that the insured—like Plaintiffs here—could not demonstrate direct physical loss to its property in the absence of any allegation that the virus was present on the premises.  *See* Ex. 1 at 19.  Judge Caproni in the U.S. District Court for the Southern District of New York reached the same conclusion in ruling on a motion for preliminary injunction: "there is no damage to . . . property"; the coronavirus "damages lungs.  It doesn't damage printing presses."  *See* Ex. 2, Transcript of Hearing on Mot. for Preliminary Inj., *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-3311, at 4-5 (S.D.N.Y. May 14, 2020).

For this additional reason, all of Plaintiffs' claims should be dismissed.

### C. Plaintiffs Cannot Establish Entitlement To Civil Authority Coverage

Finally, Plaintiffs' civil authority claims (Counts II and IV) fail for additional reasons.

In pertinent part, the civil authority coverage provides:

> When a Covered Cause of Loss causes direct physical loss or direct physical damage to property other than at the "scheduled premises", we will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur during the "civil authority period of restoration" caused by action of civil authority that prohibits access to the "scheduled premises" provided that both of the following apply:
>
> (a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the "scheduled premises" are within that area but are not more than one mile from the damaged property; and
>
> (b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Ex. C at 79. Thus, Plaintiffs must demonstrate (1) a Covered Cause of Loss, *i.e.,* direct physical loss or direct physical damage to property within one mile of its premises, (2) access to its premises was prohibited by the order of civil authority, and (3) the order of civil authority taken in response to the physical damage or loss. Plaintiffs can demonstrate none of these elements.

First, as discussed above, Plaintiffs have not alleged any physical damage, much less "direct physical loss" or "direct physical damage" to property in the immediate area of their premises. This direct physical loss or direct physical damage must arise from a Covered Cause of Loss, and not from a cause of loss that is excluded under the Policies. That failure alone is fatal to any claim for civil authority coverage.

Second, Plaintiffs cannot recover under the civil authority provision because access to their premises has not been prohibited. *See* Ex. C at 79. To the contrary, the one specific order

Plaintiffs reference, the March 19, 2020 order of Pennsylvania Governor Wolf, expressly allowed restaurants, such as Plaintiffs, to continue offering "carry-out, delivery, and drive-through food and beverage service . . . so long as social distancing and other mitigation measures are employed to protect workers and patrons." *See* March 19 order, *available at* https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order (last visited June 23, 2020).

While dine-in eating was limited by the Executive Order, that is insufficient to trigger civil authority coverage. A mere limitation or restriction of access does not suffice to trigger coverage; a complete prohibition of access is required. *See, e.g.*, *S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) (no civil authority coverage because the grounding of air traffic after 9/11 did not bar access to the plaintiff's hotel); *Commstop v. Travelers Indem. Co. of Conn.*, No. 11-1257, 2012 WL 1883461, at *9 (W.D. La. May 17, 2012) (insured "required to put forward evidence showing access to its convenience store was totally and completely prevented – *i.e.*, made impossible – by the road replacement program"); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-cv-2391, 2010 WL 2696782, at *4-5 (M.D. Pa. July 6, 2010) ("[W]here the action of a civil authority merely hinders access to the covered premises, without completely prohibiting access, federal courts have held that such action is not covered"); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *3-6 (M.D. La. Aug. 29, 2007) (no civil authority coverage unless the action of civil authority "formally forbid" or prevented access to the insured premises); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-cv-3154, 2004 WL 5704715, at *5 (N.D. Ga. Dec. 15, 2004) (no civil authority coverage for owner of airport shop because access to airport stores was not "specifically prohibited" by the FAA's order that

19

grounded flights after the September 11 terrorist attacks); *See 730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (unpublished) ("It is undisputed that the FAA did not forbid any person to access the [insured's] hotels" after the September 11th attacks).

Third, Plaintiffs admit the orders of civil authority were not issued "as a result" of direct physical loss or damage. Rather, Plaintiffs expressly allege that the orders were issued "to prevent potential exposure to COVID-19." *See* Compl. ¶ 3; *id.* ¶ 22 ("[e]fforts to prevent exposure to COVID-19 have caused civil authorities throughout the country to issue orders requiring the suspension of non-essential business . . . ."). In other words, Plaintiffs allege the orders were issued to prevent or limit the *future* spread of the coronavirus, not as a result of direct physical loss or direct physical damage caused by the virus. *See* Compl. ¶¶ 17-19, 23.

Courts routinely reject civil authority claims where orders of civil authority are aimed at fear of future harm, not existing property loss or damage. In *United Air Lines v. Insurance Company of the State of Pennsylvania*, 439 F.3d 128, 134 (2d Cir. 2006), for example, the court held that any prohibition of access to premises at Reagan National Airport after the September 11 attacks was not covered by civil authority insurance because the government's "decision to halt operations at the Airport indefinitely was based on fears of future attacks," rather than a response to existing property damage at the nearby Pentagon. Numerous other courts have reached the same conclusion. *See, e.g.*, *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-CV-00693, 2020 WL 886120, at *4 (D.S.C. Feb. 24, 2020) ("[T]he phrase 'because of,' by its plain terms, necessitates the existence of property damage or destruction *at the time the civil authority order is issued*." (emphasis added)); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) ("[T]he

Court finds that an order like Order Two that is designed to prevent, protect against, or avoid future damage is not a 'direct result' of already existing property loss or damage."); *Cleland Simpson Co. v. Fireman's Ins. Co.,* 11 Pa.D. & C.2d 607 (Ct. of Com. Pl. 1957), *aff'd without opinion,* 140 A.2d 41 (Pa. 1958) (finding no coverage when the civil authority order closing business was issued due to danger of fire, not due to the occurrence of any fire).[10]  Thus, the Executive Order at issue here aimed at slowing the future spread of the coronavirus is insufficient to trigger civil authority coverage.  For this additional reason, Counts II and IV must be dismissed.

V.     **CONCLUSION**

For the foregoing reasons and others appearing on the record, Plaintiffs have not stated any claim upon which relief can be granted.  Accordingly, this Court should grant Hartford's Motion to Dismiss and direct the Clerk to enter final judgment in Hartford's favor.

Dated this 24th day of July, 2020.

---

[10] *See also, e.g.*, *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011) ("[T]he general rule is that civil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."); *Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.*, No. 1:10-cv-54, 2011 WL 13214381, at *6 (E.D. Tex. Mar. 30, 2011) (evacuation orders issued in preparation for Hurricane Ike did not trigger civil authority coverage because they were due to the anticipated threat of future damage and not property damage that had already occurred), *report and recommendation adopted*, 2011 WL 13217067 (E.D. Tex. Apr. 8, 2011); *Jones, Walker, Waechter, Poitevant, Carrere & Denegre*, No. 09-6057, 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010) ("Reading the Civil Authority section as a whole, it is clear that it was not written with the expectation that a civil authority order would issue before the property damage that forms the basis of the order actually occurs."); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, Civil Action No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (order triggering evacuation was not issued "due to" existing property damage but rather due to a fear of future damage).

Respectfully submitted,

*/s/ Richard D. Gable*

Richard D. Gable
BUTLER WEIHMULLER KATZ CRAIG LLP
1818 Market Street, Suite 2740
Philadelphia, PA 19103
Phone: 267-507-1410
Email: rgable@butler.legal

Sarah D. Gordon
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Phone: 202-429-8005
Email: sgordon@steptoe.com

Anthony J. Anscombe
STEPTOE & JOHNSON, LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
Phone: 312-577-1265
Email: aanscombe@steptoe.com
*Pro Hac Vice Applications Forthcoming*

*Attorneys for Defendant, Hartford Underwriters Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy hereof has been furnished to:

> Daniel E. Bacine
> Mark R. Rosen
> Jeffrey A. Barrack
> Meghan J. Talbot
> 3300 Two Commerce Square
> 2001 Market Street
> Philadelphia, PA 19103
>
> Stephen R. Basser
> One America Plaza
> 600 W. Broadway, Suite 900
> San Diego, CA 92101

by ECF and e-Service on July 24, 2020.

*/s/ Richard D. Gable*
Richard D. Gable